Appellant by Editha Rosario-Moore Ms. Rosario-Moore Good afternoon, Your Honors. May it please the Court and Counsel, my name is Editha Rosario-Moore. I'm here on behalf of the Office of the State Appellant Defender, representing the defendant appellant Montana Sebby. Now as this Court knows, we've raised two issues in the opening brief. First, whether it was plain error when the trial court failed to properly admonish the jury pursuant to Rule 431B in this closely balanced case. And second, whether it was plain error for the prosecutor to improperly inform the jury of the defendant's invocation of his right to terminate the interrogation, and then to comment on that during closing arguments to infer his guilt again in this closely balanced case. Now we argue that this is a closely balanced case because, yes. Before you get there, let me just ask you. Belknap's up in front of the Supreme Court right now. Isn't this really a Belknap issue in whether, whether you've got to show prejudice, whether, you know, any closely balanced error is reversible under plain error? In a closely balanced case, if it's error, it is reversible. Isn't that what they're deciding in Belknap right now? Well, it's certainly possible that they would decide something differently than what the rule is formulated in Heron. Now the rule in Heron is that if you have clear error, regardless of the seriousness of the error, in a closely balanced case, it's plain error. That's still good law. Let me ask my question again. I get it. But my question is, is Belknap going to decide this issue for us? We respectfully assert no, because in this case, it's, we're dealing with essentially a credibility contest. We have two different versions of the case. They're both credible. They contradict each other. And there's no physical evidence corroborating or contradicting either of those versions. The case essentially turns on the trier facts determination of credibility. And so that is, that is different from my understanding of what the Belknap case is. Well, but you would agree that this is a closely balanced case? Yes. And Belknap, this court, said, well, it's closely balanced and there's error. Bam, reversal. Because that's what they said. That's what Heron said. And so the Supreme Court is going, and it's a zero principle case. Yes. The same thing is just because it's closely balanced, or because it's closely balanced, does a violation of this error or Supreme Court, whatever it is, require reversal? Or does the error have to be of such a nature as it might have tipped the scales against the defendant? And my understanding is that's what's going to be decided in Belknap. And that that's issue number one here, too, that it's the same matter. If it's closely balanced, what is the effect of an error in instructing the jury results as error? That's true. We also assert, though, that our argument that the case is closely balanced relates to our second issue, which was that it was error for the prosecutor to improperly inform the jury of the defendant's post-arrest silence and then to argue that he's guilty simply because of that. So the case could also be decided on those grounds. Okay. But I'm just – and I realize that's a different argument. But on issue number one, it just seems to me – and I say feel free to disagree with me, but it seems to me that this issue is going to be taken care of someday soon, because I think they argued Belknap in the last spring or early this fall, but recently, so. Well, I think the way we are approaching this case is we're looking at the rule as formulated inherent. Now – You're looking at what? The rule as formulated inherent. Our understanding is that's still good law. It's certainly possible that the Court would change that rule or that test, the plain error test. But absent that, that's the test that we're asserting here. And so we'd like to argue as to why it's plain error under that rule. What do you understand plain error to be? What is it? Well, under the first prong, which is what we're arguing here – No, no, no, no. When – I mean, start with plain error. What's plain error? It's essentially the reasoning inherent, tipping the scales of justice. And the reason I specifically point out – No, isn't plain error error that just exists, that's plainly evident, that has not been objected to or ruled upon? And also prejudices the defendant. Huh? And prejudices the defendant. That's the – no. First you've got to find error, right? Yes. Okay. An error is presented before a reviewing court in what manner? I'm sorry, I don't think I understand your question. Error to be determined whether it's reversible error. There's a concept called reversible error. Yes, I believe it is. Right? And there's plain error. In plain error, if so fact, it's not reversible error, is it? No. The way my understanding is, if there's clear error, then you can move on to the second part of the analysis, which is – So you're saying plain and clear are the same thing? No, I'm sorry. I'm sorry to be unclear. Well, clear error is if an error occurred. Plain error is if that error prejudices the defendant. I'm sorry if that's true. Just to think that plain error is synonymous with clear error, but it's error that hasn't been preserved by the parties, but the court can see it and then rules on to whether or not it is reversible. Then you get into prejudice in close to balance tests or denial of a substantial right. Okay. I just think it's an analytic thing that the Supreme Court has messed up for years. I think it would be helpful if we just looked at plain error as synonymous with clear error. Okay. And then go through your analysis. Okay. If I could just back up for a minute just to – I'd like to explain why this is a credibility contest. As I said in Naylor, if you have two versions of an event that are both credible, they contradict each other, there's no physical evidence corroborating or contradicting either version, and the try-or-fax determination of credibility is what the case turns on, that's a credibility contest. Now here the state argued that it was overwhelming evidence that the defendant was guilty. The only way that there could be overwhelming evidence in this case of the defendant's guilt is if that's the only evidence that was presented. Now the state presented the testimony of three deputies. They all testified to essentially the same events. They went to the Sebi family home in the early morning hours of October 27, 2011, to serve a custody order. They were met by Angela Denkenbring, who told them that no one was home. Then the defendant came to the door and an argument ensued. The defendant asked to see the custody order. He gave it back to them. He poked one of the deputies in the shoulder. They advised him he was under arrest, and when they attempted to arrest him, he resisted, and this resulted in scratches to Deputy Moore's hands and wrists. Now certainly if that were the only evidence that was presented, that would be overwhelming evidence of the defendant's guilt. But that's not the only evidence that was presented. The defense witnesses testified to what was essentially the opposite version of events. They testified at the same circumstances. It was Angela Denkenbring, which was a family friend, Oakland Sebi, the defendant's brother, and the defendant testified on his own behalf. There was also Samantha Russell, the defendant's girlfriend, but she didn't witness the events. She testified to introduce the photos of the defendant's injuries. And so those three witnesses testify that the deputies came to the Sebi family home in the early morning hours to serve a custody order. Ms. Denkenbring comes to the door. She's a family friend now. They asked her if anyone was home. She said she didn't know. She explained why she didn't know. She stayed over the night before. The only person she saw was the defendant's father, Howard, who had left earlier that morning because he's a farmer. He left early for work. And so when the deputies came in the early morning hours, she said she didn't know whether anyone else was home. The deputies were yelling at her. They were asking to go in the house. She said she couldn't give them permission because she didn't live there. This woke up the defendant. He comes to the door. An argument ensues because they want to get into the house. Words were had. And then Oakland Sebi, the defendant's brother, comes to the window and is watching these events as well. At one point, one of the deputies yells, Assault, which surprised Oakland Sebi and Angela Dinkinbury because they didn't see any physical contact. The defendant testified that he didn't make any physical contact with the deputies. He puts his hands up and says, I'm calm. I'm cool. They grab him by the arms. They pull him off the porch onto the gravel driveway, which is right in front of the house. He's not wearing any shoes. He's not wearing any socks or a shirt. And according to the defense witnesses, he gets pulled and thrown onto the gravel. Nearly the whole time they're holding his arms, and the only moving he does is to try to stand up because the gravel is hurting him. There are pictures introduced showing the injuries that he suffered because of the gravel. And so if that were the only evidence that was presented, it would look like overwhelming evidence of the defendants not being guilty. But what we have here are two different versions of the same event. And whether or not the defendant is guilty depends on the trier of facts determination of the credibility of those witnesses. Okay. And so, agreeing with you that it's closely balanced. Yes. How did this – in what way did the trial judge's instruction on there, you know, margaring the jury as potentially an error, how did that prejudice the defendant? Where is the prejudice in that? Well, if you especially look at the first two principles, 431B principles, which are the presumption of innocence and that the state has to prove the defendant guilty beyond a reasonable doubt, when you have a closely balanced case with all things being equal, it's really just a credibility contest. And you don't have the assurance that the jury understands that all things being equal. If the defendant is not proven guilty beyond a reasonable doubt, he's innocent. Well, she did tell the jury that he had to prove that he's got to be proven beyond a reasonable doubt. And she told them that he's presumed innocent throughout the trial. She did do that. Well, the state has conceded that it was clear error that she failed to also ascertain whether they understood and accepted both those principles. She did not ascertain that. Did they read the principles in the federal court? I'm not sure, Your Honor. I just know that the state conceded clear error here, and so clear error. So I'm saying, so does there have to be prejudice? And there we get to it. So you've got a closely balanced case. The judge, I think the state concedes, didn't read verbatim the catechism under Zegar. And so, and then we've got this legal question, so what? And that's what, do you have to have prejudice, denial of fair trial, and so what do we have to look at next? How does this prejudice make more likely that the jury is going to convict this fellow? If the jury didn't understand the burden of proof, because the case is so closely balanced, they could have found the defendant guilty without the state having to prove the defendant guilty beyond a reasonable doubt. That could have happened. Is all of this a problem because the Supreme Court in Thompson wouldn't find Zegar as a structural error? I mean, we wouldn't be dealing with this case, would we, if they would have ruled that it was a structural error, a denial of a basic right, which seems fairly self-evident. The right to have a jury be told that they must understand and accept these principles outlined in a mandated Supreme Court rule that tells the trial court it must so instruct the jury. It seems that if they had found that, we wouldn't be here. That's the path they've taken us down. But as far as the court, and I quote, told the jury, the most important law in a criminal case is the defendant who you will meet in a moment is presumed innocent. That presumption of innocence exists throughout the trial. The defendant doesn't have to prove anything. The defendant doesn't have to testify. The defendant doesn't have to present evidence. And the defendant, if he does not, and you cannot, you must not hold that against him or assume anything by that. The state is obligated by law to prove the defendant guilty beyond a reasonable doubt. Now, what's equivocal about that? Well, under Thompson and Wilmington, the court then has to ascertain whether the jury understands and accepts both of those things. Here, the court only asked. We're on the same page. That's what Zayer says and all that stuff. So we've got an error because we didn't do that thing. So if Belknap says you've got to show prejudice, and we're just going to pin the needle and wait for it, if you have to prove prejudice, where is the prejudice to the defendant from failure to ask those questions? Well, I would assert that when you have a 431B error, I don't know how you would actually show it short of impeaching the jury's verdict and asking them post-verdict whether they understood and accepted those principles. Or unless it was a really obvious jury question demonstrating their failure to understand. That's why the reasoning inherent is so important with the 431B error. We have to err on the side of fairness so as not to convict an innocent person. Well, I guess for the Supreme Court to call the violation of 431B structural error, wouldn't they have to say that no defendant in the history of this country ever had a fair trial until they had vetted the zero principles in Supreme Court Rule 431B because they don't give those admonitions in federal court, they didn't give them in Illinois, to my knowledge, they don't give them in any other state. And so to call it structural error, the failure to read those questions and answers that are set out in 431B, to call that structural error, that this is the kind of error that just casts the legal system in a bad light and denies the defendant a fair trial, that would be a breach of limit in light of, because that would cast doubt on every criminal conviction in the history of this country. Well, we're not asserting here that it's structural error, respectfully. I mean, I understand what you're saying, but I think that in this case we're asserting that it was plain error because it was a closely balanced case and because it was a credibility contest in light of the fact that the suit was also conceived. And it's reversible under a plain error doctrine. Yes. And so on the first issue, we say that it's a closely balanced case. The state made some claims about the defense witnesses not being credible. We assert that those claims, those arguments, are based on taking the deputy's testimony as truth. So specifically, the state argued that Denkenbring wasn't credible because she told the deputies that no one was home and, in fact, people were home, but Denkenbring testified that she told the deputies she wasn't sure and she explained why that was. That's for the jury to weigh. The state also argued that neither Denkenbring nor Oakland Seve were credible because they couldn't feel the defendant, that the deputies would know because they could feel the defendant. Again, that assumes that the deputies were telling the truth, and that's for the jury to determine. And the state also argued that the defendant was impeached by stipulation, which is just simply not true. The defendant stipulated to the testimony that Officer Martin would give, which is that he was there the day before the incident occurred, he attempted to serve the custody order, and the defendant told him that Bonnie Seve, his mother, who allegedly had the child to issue the custody order, was running errands. The defendant stipulated to that testimony, not the truth of that testimony. The defendant testified to the opposite. He said he told, well, not the opposite, but different information. He told Officer Martin that his mother was on vacation, and that's exactly what he testified that he told the deputies, and the deputies corroborated that. So there was no impeachment here. There was contrary testimony. And because there was error in this case, this closely balanced case, we assert that it was plain error, and respectfully ask that this court reverse and remand the cause for a new trial. I'd just like to briefly touch on the second issue, the argument that this is a closely balanced case is related to the error that the prosecutor improperly informed the jury, the defendant's right to terminate the interrogation and then to comment on it during closing arguments to infer his guilt. Now, under Doyle, cannot use a defendant's post-arrest silence to impeach the defendant or to otherwise create an inference of guilt. So we draw on Doyle for that proposition. We cite it to Simmons. In our brief, we said this was very similar. In that case, officer informed the jury during testimony that the defendant asserted his right to post-arrest silence and then also commented on it during closing. In that case, the court reasoned that it deprived the defendant of any defense. He was guilty because he didn't speak before trial, and he was guilty because he did speak at trial. And we assert the same thing happened here. So because that error occurred and this case is closely balanced, we assert that, and we respectfully ask that this court reverse and remand the cause for a new trial on that issue. Thank you. Thank you. Mr. Lennon. May it please the Court, Counsel, Belknap was argued on September 10, 2014. Can we agree that the Supreme Court affirms Belknap, you lose? We can't agree. We don't know what they're going to decide. But all I'm asking that you hold the case in abeyance and we'll see what the Supreme Court decides, and it will be dispositive of this issue. So the issues have been fully briefed. This court has a good handle on the facts and the law, so I won't argue issue one. I'd just like you to hold the case in abeyance until the Supreme Court decides that issue. Just briefly, issue two, I argue that there is not plain air here. The defendant was arrested, taken down to the police station, and he waived his Miranda rights, and he began speaking. And then after a minute or so, he said, I'm going to exercise my right to remain silent. Now at trial, the detective who was interviewing the defendant volunteered the information that the defendant asserted his right to remain silent. I argue that that is not clear air or plain air. I cite the People v. Martinez case. In that case, the same thing happened. The officer volunteered the testimony that the defendant exercised his right to remain silent. In that case, they found no plain air. I respectfully disagree with counsel that the prosecutor commented on the defendant's silence in closing argument and that the evidence was not closely balanced. I guess I'll take the evidence first. We have three police officers testifying. They were simply at the Seve Residence to serve a court order because Bonnie Seve, the grandmother of the child that they were seeking, the child to give the custody to the father. On the other side, we have the defendant himself, of course, arguing and denying that he put up any struggle. He was simply calm, and the police officers grabbed him for no reason and threw him down on the ground, and that's how he became scratched. So we have an evidentiary contest between the defendant, the defendant's family, and the defendant's friend against the police officers who testified that the defendant poked the officer in the chest, and the officer is then told that the defendant, he was under arrest for aggravated battery, and the defendant resisted arrest, and the struggle between the officers and the defendant occurred, and Officer Moore received injuries to his hands because of the defendant's resisting arrest. It's quality against quantity. I believe this evidence is overwhelming because the police officer's testimony is clear, convincing, it's rebutted by the defendants, but the defendants' witnesses were less than stellar character witnesses. As the defense counsel stated, Angela Dinkinbrink stated that she said she did not know who was in the house. I find that kind of incredible because the defendant momentarily showed up behind her after that and confronted the police officers. We have the defendant's brother. The officer said they did not see anybody else looking outside except for the woman on the porch who was Angela Dinkinbrink, and, of course, Oakland Seve testifies on behalf of his brother that, no, the officers just grabbed him and threw him down on the ground, which I find not very credible. So I believe that the evidence here is overwhelming because the quality of the evidence of the people putting on the officers is more credible than the self-interest of the defendant and his family. But what about this neighbor lady? What would make her have any motivation not to tell the truth, her family friend or whoever she is? Angela Dinkinbrink. What about her isn't credible? Well, she was a friend of the Seve's, and she used to date Oakland Seve. Which maybe would give her a reason that if they used to date, maybe she... Well, she seems to be on good terms with the Seve's because she spent the night there. And she lied when she said that there was nobody else home. The defense counsel assumed that... I thought she testified that she just said she didn't know who was home. How do we... So you're just saying that because the officer said something else that she must be a liar, is that... No. I believe that her testimony was not credible because she said there was no one else home. But momentarily later, the defendant shows up behind her after the officers have been banging on the door for five or ten minutes then Ms. Dinkinbrink comes to the door. I just find her testimony not credible. And the difference between the testimony... We also have here photos of the scratches on the officers' hands. Well, if the defendant wasn't resisting arrest, why did the officers' hands become scratched? The officers just asked that the defendant put his hands behind his back, but the officers testified that the defendant was on his stomach. He was pulling his arms underneath his body to prevent the officers from putting the defendant's arms behind his back. And it just seems credible that that's how Deputy Moore received the scratches on his hands. Let me just ask you. Our job is not to re-weight credibility of these witnesses. The Supreme Court tells us don't do that. And if I get in a struggle with somebody, I can get my hands scratched whether I started the struggle or somebody else started it. So that's not our role here, to decide which one of these witnesses we like better and believe. You have to decide what the evidence is if it's closely balanced. You can consider credibility, but usually that's a question for the jury. The jury must have found the officers credible, and the defendant and his witnesses not credible because they convicted the defendant of resisting arrest. So if you don't have any more questions, I just ask you. Well, I have a question. Okay. The second issue, you're saying that there was no error occurred there. Yes. So that the police officer can testify that the defendant invoked his right to remain silent, is that right? No, he should not testify to that. Well, then there was error, right? But it was not plain error. How do you define plain error? It was not clear and obvious. It was not clear and obvious. That's what the Martinez case said, and I'm relying on the Martinez case. That it was not clear and obvious that the police officer testified about the defendant invoking his right to remain silent. That's not clear and obvious? Martinez held that it was not clear and obvious. It was not plain error, and that's my position. I guess I did not address the closing argument. So we won't find the officer testifying to that, right? No, he did testify that the defendant. Oh, I see. So it is obvious from the record that he did testify. Yes. And that is an error. Is that correct? It was error, but it was not plain error. Well, what is plain error? Yes. We're all waiting for the Supreme Court to tell us. No, no. Plain error is something that you just said. It was obvious from the record. It's error. You said it's error to do that. Yes. So what you're really talking about, is it reversible error? Yes. I'm sorry. Yes. Yes, it's not reversible. Yeah. Okay. Thank you. By the way, the defendant did, after being with Brett Moran, did talk for a while. Yes, he did. He answered a few questions. Yes. And then he did it. So it's not that he's saying, I gave you Ms. Miranda, and he invoked his rights. Right. He answered some questions and then decided to stop. Yes. All right. Well, but did, during the closing argument, was there comment on his post-arrest silence? That's where the defense counsel and I disagree. Okay. I do not believe that the prosecutor was commenting on the defendant's post-Miranda silence. If you take the quote in context, the defendant, the quote in controversy here is the prosecutor said, there are no statements made by any defense witnesses to any law enforcement about what happened that day. Well, he's commenting on the defense witnesses. The defendant is a witness for himself, but he's not actually a witness. He's a different class of person. He's the defendant. Now, earlier in the trial, the prosecutor was commenting on the silence of Angela Dinkinbrink and Samantha Russell. They testified for the defendant. And the prosecutor said on cross-examination, now you did not give any statements to police before your testimony here today. And they said no. And that's what the prosecutor was commenting on, on their silence, not on the defendant's silence. If you take it in the context, it's not an error. It's not the prosecutor commenting on the defendant's silence. So I disagree with defense counsel at that point. I believe that's all the points that I wanted to mention. I'd be happy to answer any more questions. Other than that, I ask you to hold it in the maintenance. Thank you, Mr. Leonard. Counsel, any rebuttals? Yes. I'd like to just begin on that, the context of that comment during closing argument. We did provide context in the opening brief and in the reply of that statement. And I could read that context to make it very clear that the prosecutor was, in fact, referencing the defendant. He starts out saying, clearly what happened that morning was because Mr. Sebi's testimony here today is just not believable. The officer's testimony were consistent. They all made sense. The officer's testimony was based off reports they made in October of 2011. There are no statements made by any defense witnesses to any law enforcement about what happened that day. I think in light of the fact that Mr. Sebi testified on his behalf, and the prosecutor begins that section by referencing the defendant's testimony, it's very clear what the prosecutor's doing. He's pitting all of the defense witnesses against all of the state's witnesses who he says made prior consistent statements. But do we have a little different animal in the defendant after being read Moran that talks for a while? Well, I also have a point on that. At that point, because at that point,  he decided to stop talking. So I think the rules are different. Once the defendant starts talking, then the rules change. Well, the state cites to Martinez for that proposition, and that principle is that if he agrees to speak after the Miranda rights are given, and then requests an end to the interview, comments on this fact alone, without further exploitation by law enforcement, by the state is not a Doyle violation. We are arguing there is further exploitation. The prosecutor used that information very clearly. He didn't say Angela Dankenbring didn't make a statement, and Oakland Sebi didn't make a statement. He sent all the defense witnesses. And in a case where the defendant testifies, you can't make a statement like that. That violates the principle of Doyle. It's as in Simmons. You're depriving the defendant of a defense if he is guilty because he didn't make the statement. If during the time he spoke he didn't make that statement, the police can comment on the fact that we talked to him for whatever time, and at that point he never said this. What's wrong with that? If he talked, that's fair game. Well, under Doyle, the only exception is if he made a prior inconsistent statement or if he testified at trial that he made an exculpatory statement, and, in fact, he didn't. And we don't have either of those exceptions here. So we respectfully disagree and say that it was error and it did violate the principle of Doyle when the deputy testified, and then when it was referenced in closing argument. We argued cumulative error. That's another point I wanted to make. The state has mischaracterized our argument. We were very clear from the beginning that it was the cumulative effect of both of these instances that was error in the case. And because it's closely balanced, we assert that it's plain error. It's reversible.  Thank you. I'll somehow get this through. All right. Thank you. That's what we're all looking for is whether that's true or not. Thank you. Okay. Thank you both here for your arguments this afternoon. This case will be taken under advisement, and you probably won't hear anything from us until we hear from the Supreme Court and Belknap, because it just seems to make sense. But then a written disposition will be issued, and right now we'll be in a brief recess for a panel change. Thank you.